# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 26, 2013

## ALEX STEVINO PORTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for McMinn County**
**No. 2010-CR-219    Carroll L. Ross, Judge**

---

**No. E2012-00481-CCA-R3-PC - Filed September 18, 2013**

---

Petitioner, Alex Porter, appeals from the post-conviction court's denial of his petition for post-conviction relief following an evidentiary hearing. Petitioner was convicted of first degree murder and sentenced to life in prison with the possibility of parole. On appeal, Petitioner contends that the post-conviction court erred in denying the petition because both trial counsel and appellate counsel rendered ineffective assistance of counsel. More specifically, Petitioner contends that trial counsel was ineffective at trial by (1) failing to adequately investigate, develop, or present a theory of self-defense; (2) allowing a witness to improperly assert Fifth Amendment protection after a prior admonition from the trial court; (3) failing to properly advise the petitioner of his right to testify on his own behalf and failing to preserve Petitioner's right to appeal *Momon* defects in the trial court proceedings; (4) announcing to the jury that Petitioner was incarcerated at the time of trial; and (5) failing to challenge the expert witness testimony of the State's firearms examiner or presenting rebuttal evidence to her testimony. Petitioner contends that trial counsel was ineffective on appeal by failing to adequately communicate with him during the appellate process. Petitioner further contends that he was denied due process during the post-conviction proceedings. Following our review of the record, we affirm the denial of relief.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

David K. Calfee, Cleveland, Tennessee, for the appellant, Alex Stevino Porter.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Steven Bebb, District Attorney General; and James H. Stutts, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

The relevant facts underlying Petitioner's conviction as recited by this court on direct appeal in considering the sufficiency of the evidence of Petitioner's conviction are as follows:

Looking at the evidence in a light most favorable to the State, the evidence showed that prior to Mr. Ware's shooting death, Appellant made statements indicating his anger toward Mr. Ware. Appellant commented that he was mad at Mr. Ware because he had tried to rob Appellant's sister Mary, and he wanted to confront Mr. Ware. On the day of the incident, Appellant was driven by Dustin Witt to an area behind the tennis courts at Tennessee Wesleyan College at Appellant's request. Appellant was accompanied by Kenneth Hammonds, Perry Gunter, and Omar Robinson. When they arrived, the four men got out of the car and walked toward Ingleside Avenue to Ms. Arnwine's house. Mr. Witt parked the car in a church parking lot and later joined the others outside Ms. Arnwine's house. According to the testimony at trial, Appellant along with Mr. Gunter and Mr. Robinson hid behind some bushes outside the house. At some point, Mr. Hammonds left the scene because he did not like the "body language" that he saw. Appellant and Mr. Witt moved to the back of the house by a shed. Mr. Witt testified that he heard Appellant call Ms. Arnwine on the telephone and ask her if he could visit. She told him that she had company. Appellant pulled out his gun and told Mr. Witt that he was "getting ready to give it to this mother f----- because he tried to rob my sister Mary not too long ago and I still haven't forgot [sic] about it." Mr. Gunter also heard Appellant say that he was going to "handle" Mr. Ware. Mr. Ware walked out of Ms. Arnwine's house. Appellant crouched down and shot Mr. Ware. There was no evidence entered at trial that indicated that Mr. Ware was brandishing a weapon at the time, even though he was seen with a gun at Ms. Arnwine's house earlier.

After Mr. Ware was shot, Appellant, Mr. Witt, and Mr. Gunter ran back to the car and drove away. Appellant still had his weapon. They picked up Mr. Robinson a bit later. When Mr. Robinson joined the men, he gave a revolver to Appellant. Appellant told the men he was going to get rid of the guns. Appellant later led authorities to a remote location in Etowah, Tennessee where they found pieces to a revolver, a 9 mm Hi-Point semi-automatic, and other material in a hole. The weapons appeared to have been melted.

All of the bullets removed from the victim's body had nine grooves on the rifling with a left hand twist, consistent with Hi-Point Firearms. Three of the bullets recovered from the scene were .380 caliber and three of the bullets were 9mm. Agent Betts determined that all six bullets were fired from the same weapon, most likely a 9mm pistol.

*State v. Alex Stevino Porter*, No. E2007-01101-CCA-R3-CD, 2008 WL 5169575, at *6 (Tenn. Crim. App. Dec. 10, 2008).

*Post-Conviction Hearing*

Trial counsel testified that he was retained to represent Petitioner, and he assumed that he first made contact with Petitioner at the jail. Petitioner was initially represented by other counsel. Trial counsel had been referred to Petitioner by the investigative firm of Coleman and Burris, who had been retained by Petitioner's family. Trial counsel filed a notice of self-defense, but he could not recall if he communicated that with Petitioner. Trial counsel testified that he based the notice of self-defense on prior testimony that the victim had a gun when he left the apartment prior to being shot. There was also a firearm in the apartment where the victim had been just prior to the shooting. After the shooting, one of the victim's associates walked back into the apartment with a gun and requested that it be hidden. Trial counsel testified that the filing of the self-defense notice was made out of an "abundance of precaution."

Trial counsel acknowledged that he told the jury in opening statements that a notice of self-defense had been filed. The State later attempted to put on evidence that there had been a previous confrontation between the victim and Petitioner's sister. However, trial counsel testified that Petitioner's sister was present at trial to offer testimony that if there was an incident, there were no bad feelings between the victim and Defendant. Trial counsel testified that he did not intend to develop any proof at trial on the issue of self-defense. He said:

The situation, if I remember correctly, one of the witnesses that testified against Mr. Porter had changed his story a couple of times, was involved in another murder, I think up in Sweetwater, or somewhere close by. And there was one or two witnesses that came and testified from Federal Court that were in federal custody. It seemed like there was sufficient proof to show that they had changed their stories after they had received some sort of benefit or some, some sort of agreement with the State for some other charges, and the gentleman from Federal Court had a tremendously large amount of time. So that's why I was saying I didn't know what they were going to say. And I . . .

-3-

I knew they had a statement, but I knew they weren't abiding by their statements. So . . . I didn't want to develop a self-defense.

During a jury-out hearing on a Tenn. R. Crim. P. 29 motion, trial counsel informed the trial court that any type of self-defense motion was withdrawn due to insufficient proof. Trial counsel further informed the court that "[w]e filed this months ago as a precaution. If the Court puts it in that's fine, but we will withdraw the motion." During the State's closing argument, the prosecutor *pro tem* made the following statement: "[O]h, they are withdrawing the self-defense. They started off saying I did it but I was scared and fearful of my life, and we don't have that anymore. It's just whether or not he did it[.]"

Although he could not specifically recall, trial counsel did not dispute that the prosecutor, in opening statements, indicated that there may be a witness who would assert his Fifth Amendment right against self-incrimination. The trial court then broke for lunch, and the following exchange took place:

THE COURT: I do want to talk to counsel about one thing before we leave here. Have a seat, folks. Just a minute, please. Gentlemen, there have been some comments made that I want to just briefly venture up an opinion on about people testifying and claiming a 5th amendment. Unless I'm mistaken people, if they choose to testify they can't claim the 5th amendment. They can't pick and choose which answers they give. If they waive their 5th amendment right to testify they have to testify to any question that either side ask[s] them.

[TRIAL COUNSEL]: Judge, I'm not familiar with that. I'm just understanding in a federal case they have a right to take the 5th amendment, but if the Court can give an instruction - -

THE COURT: I don't think in criminal court you do.

[TRIAL COUNSEL]: That's what I don't know.

[PROSECUTOR]: I don't know that either, Judge.

-4-

| | |
|---|---|
| THE COURT: | In criminal court you can't choose not to testify. You have to come testify in a civil case but you don't have to in a criminal case. |
| [PROSECUTOR]: | Well, he has a subpoena to testify and they are not here - - |
| THE COURT: | But they don't have to testify period. They can't take the 5th and not testify at all. |
| [PROSECUTOR]: | I think their lawyer can - - |
| THE COURT: | They can't say I will agree to testify only to the things I want to and I will take the 5th on select answers. If he asks a question and they don't want to answer they can't say "Well, I'm going to take the 5th on you but I'm going to answer all your questions. |
| [PROSECUTOR]: | Well, one of them just said he's going to take the 5th on whether or not he ever had a gun in his hand. |
| [TRIAL COUNSEL]: | Judge, I understand, and I don't know if you can - - |
| THE COURT: | Well, maybe you all could both stipulate not to ask that question and that's fine, but I'm just, my understanding of how this works in a criminal case is you can't pick and choose which questions they have to answer. And you probably wouldn't even ask the question obviously if you don't want him to answer it, but - - |
| [TRIAL COUNSEL]: | There may be a way and I'm going to go over it right now and see if I can look into it. |
| THE COURT: | Okay. That's fine. I just got to hearing those things and just wanted to bring it up. |

Trial counsel admitted that at trial, he did not object to the witness, Perry Gunter, asserting his Fifth Amendment right in response to one question on direct-examination and three times during cross-examination. The questions regarded whether Mr. Gunter was also shot on the night of the murder. Trial counsel testified that Mr. Gunter's testimony did not make any sense or have any credibility. He said, "No I wanted them to - I thought it was just so incredulous; it made no sense. I was thinking, well, hopefully a jury would be able to sort through that." He did not ask the trial court to disregard Mr. Gunter's entire testimony. Trial counsel testified: "I was thinking it, it - - the damage would be or the better defense would be to allow them to hear the testimony, which I didn't believe made any sense."

Trial counsel acknowledged that during voir dire, he told the jury that Petitioner was incarcerated at the time. He said, "I sort of want to do that in case a juror or someone sees him in chains or in the back." At the time trial counsel made the statement, Petitioner was wearing plain clothes. When asked if informing the jurors that Petitioner was incarcerated "undoes that potential risk of prejudice," trial counsel replied:

> Well, that may be an opinion, and that's always a possibility, but through the years, I've sort of found out it's better and that's sort of how I learned. It's better to go ahead and let everyone know. "We're in custody; we're here," and that's sort of how I was taught.

Trial counsel testified that two guns were found by law enforcement that were mangled, but there was no proof that the guns were used during the shooting in Petitioner's case. One of the weapons was a ".380." There was testimony by Special Agent Shelley Betts of the Tennessee Bureau of Investigation (TBI) that a .380 round and a 9mm round could both be fired from the same gun. During cross-examination, trial counsel made an effort to bring out through the witness that it was not possible to fire the two rounds from the same weapon without causing a problem with the gun. Although he did not consult a firearms expert, trial counsel testified that he discussed the matter with Mr. Coleman and Mr. Burris who had both "been involved in law enforcement for a fairly good number of years, and they were the one[s] that enlightened me as far as guns, the .380 and the 9mm." Trial counsel testified that their opinions were different than that of Special Agent Betts. He did not consider calling them as expert witnesses or any other expert because he did not "think it was material since they couldn't show that either one of these could be used as the murder weapon, then we could probably got in, gotten into that. I didn't feel, think it was necessary."

Trial counsel testified that he was appointed as Petitioner's counsel on appeal. He did not recall reviewing the trial transcript with Petitioner who had already been placed with the Department of Correction. Although he could not recall for certain, trial counsel thought that

Petitioner sent him letters concerning issues for appeal, and they had some discussions. Trial counsel thought that he "formed" the issues for appeal, and "a gentleman out of North Carolina named Ed Yeager (phonic) probably pieced together the particulars of the appeal." Upon drafting the appeal, trial counsel testified that he did not review its contents with Petitioner, and he did not request any input from Petitioner or discuss the appeal with him. He provided a copy of the appellate brief to Petitioner after it was filed with the Court of Criminal Appeals.

When asked if Petitioner wanted to testify on his own behalf at trial, trial counsel testified:

> He may have. I, I know I didn't want him to testify, the way the proof was. I felt the proof was very tenuous, as far as showing his culpability, and as far as for him testifying, I did not want him to testify in the least bit. Now I don't remember us having a hearing regarding that, but my recommendation, "Shucks, no, you don't need to testify.

Trial counsel could not remember if Petitioner told him or Mr. Burris or Mr. Coleman that he wanted to testify. He said, "I was wanting to encourage him and speak to him in no uncertain terms, he did not need to testify."

On cross-examination, regarding Mr. Gunter asserting his Fifth Amendment right against self-incrimination, trial counsel testified:

> I thought at best he [Gunter] was just a, a street thug. I didn't think he had any credibility in his testimony, and I was hoping it would show some of the weaknesses in the State's case. I - sometimes it matters, and I'm familiar with the Fifth Amendment, and the Court had some concerns about it. But I was thinking, "Let them hear this person," because he, he didn't look credible. I didn't think his testimony was credible. It was a trial tactic. If they were going to - I, I didn't think his testimony would be enough for anyone to convict another person.

Trial counsel testified that during cross-examination, Mr. Gunter acknowledged that he was serving a federal sentence of 240 months. Mr. Gunter also acknowledged in front of the jury that he understood a Rule 35 motion, and he understood that by testifying at Petitioner's trial, he could go back and ask the federal judge for less time to serve. Trial counsel testified that Mr. Gunter further acknowledged on cross-examination that his testimony at trial was not consistent with what he told police after the murder. The same was

true with Omar Robinson. He was a federal prisoner at the time of trial and was serving a sentence of 292 months.

Petitioner testified that during trial, he first learned that trial counsel had filed a notice of self-defense. He said that trial counsel did not consult with him before filing the notice, and he was surprised that it had been filed because "that's just like saying that I did it[.]" Petitioner testified that he would never have agreed that a notice of self-defense was appropriate. Petitioner testified that he and trial counsel did not discuss informing the jury that he was incarcerated at the time of trial, and he did not feel that it was appropriate to inform them of such at voir dire. Petitioner testified that trial counsel did not discuss Mr. Gunter or Omar Robinson potentially asserting their Fifth Amendment right against self-incrimination despite the warning of the trial court.

Petitioner testified that trial counsel never discussed Mr. Burris and Mr. Coleman's opinion that the TBI ballistics and firearms expert's opinion was incorrect. He said:

> They didn't say that the expert's opinion was incorrect. They just said that the expert is saying that . . . you could put .380 shells and 9mm shells in a clip and fire them without it jamming up and all of this. And I said, "Well, what you need to do is at least talk to an expert on this, or maybe you could call the company that makes that type of weapon and see, you know, if their weapons are designed to do that."

Petitioner testified that trial counsel never talked to him about calling Mr. Coleman or Mr. Burris as a witness. To his knowledge, trial counsel did not attempt to find an expert witness to contradict the testimony of the firearms expert. Petitioner testified that he gave trial counsel the contact information for the gun manufacturer, but trial counsel did not contact them to determine whether or not the weapon could function.

Petitioner testified that trial counsel never discussed the issues that he thought were important on appeal. He did not provide any information that someone else was drafting the appeal. Petitioner testified that he was not given any information or a draft of the appellate brief to review before it was filed. He said that he received a copy of the brief after it was filed. Petitioner testified that he told Mr. Coleman that he wanted to testify, and he also communicated that desire to trial counsel over the phone and the day before trial. However, trial counsel did not make any effort to call him as a witness. Petitioner testified that trial counsel never in open court advised the trial court that Petitioner requested the right to testify and that trial counsel had advised against it.

When asked whether he and trial counsel discussed the strategy of the case, Petitioner testified:

> We never had a talk about what was the appropriate strategy for the case, okay? And I surely wouldn't have accepted self-defense strategy, because that's saying, you know, that it happened, and I'm telling him, you know, completely different.

On cross-examination, Petitioner testified that he gave trial counsel the number for the gun manufacturer for the type of gun used in the murder, which was a "Hi-Point" 9mm. He said, "I called . . . my family, had them call information and they traced - well, they found out that the Hi-Point manufacturer was somewhere in Michigan. They got the number. I gave the number to . . . my investigators." Petitioner testified that the investigators were supposed to give the number to trial counsel. He said that one of the investigators informed him that they did not call the gun manufacturer because the State's expert was testifying concerning the weapons.

## II. Standard of Review

On appeal, Petitioner asserts that he received ineffective assistance of trial counsel because trial counsel (1) failed to adequately investigate, develop, or present a theory of self-defense; (2) allowed a witness to improperly assert Fifth Amendment protection after a prior admonition from the trial court; (3) failed to properly advise the petitioner of his right to testify on his own behalf and failed to preserve Petitioner's right to appeal *Momon* defects in the trial court proceedings; (4) announced to the jury that Petitioner was incarcerated at the time of trial; and (5) failed to challenge the expert witness testimony of the State's firearms examiner or present rebuttal evidence to her testimony. Petitioner contends that trial counsel was ineffective on appeal for failing to adequately communicate with him during the appellate process. Petitioner further contends that he was denied due process during the post-conviction proceedings. We disagree.

In a claim for post-conviction relief, the petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn.Code Ann. § 40-30-110(f); *Grindstaff v. State,* 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State,* 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and

value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State*, 18 S.W.3d 152,156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence preponderates against them. *See Henley v. State,* 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State,* 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State,* 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, . . . thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief based on the alleged ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient, and (b) that the deficient performance was prejudicial. *See Powers v. State,* 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State,* 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State,* 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Concerning Petitioner's post-conviction petition, the trial court made the following findings:

At the hearing in this case, the petitioner complained about many of trial counsel's strategic decisions as to how the case should be tried. Again, the proof at trial against the petitioner was overwhelming, and the petitioner is not entitled to the benefit of hindsight; the petitioner may not second-guess a reasonably based trial strategy; and the petitioner may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. *Adkins v. State*, 91 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Cooper v. State*, 847 S.W.2d 528 (Tenn. Crim. App. 1992).

Trial counsel was questioned at length about a litany of testimonial issues that occurred at trial. The petitioner also testified himself about many issues that occurred at trial. However, there was no showing, regardless of whether or not defense counsel had taken a different approach to the trial, that the result would have been different. Neither 'prong' of the Strickland test was shown by any evidence presented at the hearing in this cause.

## A. Ineffective Assistance of Counsel at Trial

First, Petitioner argues that trial counsel failed to adequately investigate, develop, or present a theory of self-defense, "which was incongruent with the defense's overarching theory of the case. In doing so, trial counsel not only failed to establish any of the tenants of self-defense, but actually damaged [Petitioner's] case in tacitly admitting that he killed the victim." As pointed out by Petitioner, at the time of the offense, self-defense was defined as follows:

A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39-11-611(a).

At the post-conviction hearing, trial counsel testified that he filed a notice of self-defense, but he could not recall if he communicated that with Petitioner. Trial counsel testified that the filing of the self-defense notice was made out of an "abundance of [ ] caution." Trial counsel also acknowledged that he told the jury in opening statements that

-11-

a notice of self-defense had been filed. He based the notice of self-defense on testimony from a previous proceeding that the victim had a gun when he left the apartment prior to being shot. There was also a firearm in the apartment where the victim had been. After the shooting, one of the victim's associates walked back into the apartment with a gun that he asked to be hidden. Trial counsel was successful in developing some of these facts at trial. He used a prior written statement from Ms. Arnwine to elicit testimony from her on cross-examination that the victim was mad when he arrived at her apartment on the night of the shooting and that he had a gun in his hand. According to Ms. Arnwine, the victim indicated that he was tired of being "MF-ed" with, and that he was "going to take care of some of the people in Athens in the park." And show them that he was not a "punk [n ____ ]." Trial counsel was also aware of a prior statement by Mr. Gunter indicating that: "Wayne comes out and he starts shooting."

As the trial proceeded, trial counsel testified that he could not successfully develop a defense of self-defense. He said:

> The situation, if I remember correctly, one of the witnesses that testified against Mr. Porter had changed his story a couple of times, was involved in another murder, I think up in Sweetwater, or somewhere close by. And there was one or two witnesses that came and testified from Federal Court that were in federal custody. It seemed like there was sufficient proof to show that they had changed their stories after they had received some sort of benefit or some, some sort of agreement with the State for some other charges, and the gentleman from Federal Court had a tremendously large amount of time. So that's why I was saying I didn't know what they were going to say. And I . . . I knew they had a statement, but I knew *they weren't abiding by their statements. So . . . I didn't want to develop a self-defense.*

(*emphasis added*). During trial, Mr. Gunter claimed that he was not referring to the victim when he made the statement that "Wayne comes out and he starts shooting." Mr. Gunter instead insisted that Petitioner was the shooter. Thus, the proof at the post-conviction hearing indicated that due to developments at trial, trial counsel was forced to abandon the theory of self-defense.

In certain circumstances, the failure to present evidence promised during the opening statement constitutes ineffective assistance of counsel. *State v. Zimmerman,* 823 S.W.2d 220, 224 (Tenn. Crim. App. 1991). "'The trial attorney should only inform the jury of the evidence that he is sure he can prove. . . . His failure to keep [a] promise [to the jury] impairs his personal credibility.'" *Id.* at 225 (quoting McCloskey, *Criminal Law Desk Book,* § 1506(3)(O) (Matthew Bender, 1990)). Our supreme court noted that in *Zimmerman,* it was

-12-

counsel's sudden, unwarranted change in trial strategy that resulted in the deficient performance. *King v. State*, 989 S.W.2d 319, 332 (Tenn. 1999) (citing *Zimmerman*, 823 S.W.2d at 224, 226). However, the supreme court held that a change in defense strategy did not rise to the level of the ineffective assistance of counsel when it occurred in response to surprise testimony or other change in the proceedings. *See id.* at 332. "[A]ssuming counsel does not know at the time of the opening statements that he will not produce the promised evidence, an informed change of strategy in the midst of trial is 'virtually unchallengeable.'" *Felts v. State*, 354 S.W.3d 266, 285 (Tenn. 2011)(quoting *Turner v. Williams*, 35 F.3d 872, 904 (4th Cir. 1994), overruled on other grounds by *O'Dell v. Netherland*, 95 F.3d 1214, 1222 (4th Cir. 1996)). Likewise, in this case, trial counsel's performance was not deficient concerning this issue since he was faced during trial with witnesses whose testimony had changed from their original statements.

Even if trial counsel's performance in this area was deficient, as pointed out by the State, Petitioner has not demonstrated any prejudice. As previously noted by this court, Mr. Gunter, Mr. Robinson, and Mr. Witt also provided "substantially similar" testimony which placed Petitioner at the scene of the murder with a gun after hearing Petitioner indicate that he had a problem with the victim. *State v. Alex Stevino Porter*, No. E2007-01101-CCA-R3-CD, 2008 WL 5169575, at *7 (Tenn. Crim. App. Dec. 10, 2008). Both Mr. Witt and Mr. Perry testified that they witnessed Petitioner shoot the victim in an ambush attack. Petitioner was also involved in disposing of the weapons after the shooting. The post-conviction court in this case found that the proof against Petitioner was overwhelming and that, "[T]here was no showing, regardless of whether or not trial counsel had taken a different approach to the trial, that the result would have been different." We agree. Petitioner failed to carry his burden of proof on this allegation by clear and convincing evidence, and he is not entitled to relief.

Second, Petitioner contends that trial counsel was ineffective for failing to object to Perry Gunter's assertion of his Fifth Amendment right against self-incrimination to questions regarding whether he was a "street dealer" and whether he received a gunshot wound on the night of the murder. Mr. Gunter answered all other questions.

As pointed out by the State, a witness has no right to refuse to answer any or all questions asked of him or her in a judicial proceeding; he or she only has the right to invoke the Fifth Amendment with respect to matters that will incriminate him or her. *State v. Stapleton*, 638 S.W.2d 850, 855 (Tenn. Crim. App. 1982). Concerning the testimony of a witness other than the accused, a question-by-question determination of whether a witness may claim a Fifth Amendment privilege is the appropriate procedure to resolve the problem of a witness who is reluctant to testify because of potentially incriminating answers to questions asked on cross-examination. *State v. Dooley*, 29 S.W.3d 542, 551 (Tenn. Crim.

App. 2000). The witness must answer those questions seeking to elicit relevant non-incriminating information in the witness' possession. *Id.* If the witness is asked for incriminating information on cross-examination, he or she may claim the Fifth Amendment privilege at that time. *Id.*

Trial counsel admitted that at trial, he did not object to the witness, Perry Gunter, asserting his Fifth Amendment right in response to one question on direct-examination and three times during cross-examination. The questions were concerning whether Mr. Gunter was a "street dealer," whether he was also shot on the night of the murder, and whether he had a gun on the night of the shooting. Trial counsel testified that Mr. Gunter's testimony did not make any sense or have any credibility. He said, "No I wanted them to - I thought it was just so incredulous; it made no sense. I was thinking, well, hopefully a jury would be able to sort through that." He did not ask the trial court to disregard Mr. Gunter's entire testimony. Trial counsel testified: "I was thinking it, it - - the damage would be or the better defense would be to allow them to hear the testimony, which I didn't believe made any sense."

On cross-examination, regarding Mr. Gunter asserting his Fifth Amendment right against self-incrimination, trial counsel further testified:

I thought at best he [Gunter] was just a, a street thug. I didn't think he had any credibility in his testimony, and I was hoping it would show some of the weaknesses in the State's case. I - sometimes it matters, and I'm familiar with the Fifth Amendment, and the Court had some concerns about it. But I was thinking, "Let them hear this person," because he, he didn't look credible. I didn't think his testimony was credible. It was a trial tactic. If they were going to - I, I didn't think his testimony would be enough for anyone to convict another person.

Trial counsel testified that during cross-examination, Mr. Gunter acknowledged that he was serving a federal sentence of 240 months. Mr. Gunter also acknowledged in front of the jury that he understood that by testifying at Petitioner's trial, he could go back and ask the federal judge for less time to serve. Trial counsel testified that Mr. Gunter further acknowledged on cross-examination that his testimony at trial was not consistent with what he told police after the murder.

We conclude that trial counsel made a sound strategic decision concerning this matter to let Mr. Gunter claim the Fifth Amendment privilege which made him look even more of the "criminal type" and thus, further damaging his credibility in front of the jury. Trial counsel's performance in this area was not deficient.

-14-

Additionally, Petitioner has failed to demonstrate any prejudice by trial counsel's failing to object to Mr. Gunter's assertion of his Fifth Amendment right. If Mr. Gunter had been forced to answer the questions, there was no showing that the testimony elicited from him would have benefitted Petitioner or changed the outcome of the trial. Petitioner did not present any proof at the post-conviction hearing as to what Mr. Gunter would have said if he had been forced to answer the questions.

Third, Petitioner argues that trial counsel rendered ineffective assistance of counsel by failing to follow the procedures set forth in *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999) to ensure that he personally and voluntarily waived his right to testify at trial. A defendant has a constitutional right, under both federal and state law, to testify. *Momon,* 18 S.W.3d at 157. Because the right to testify is a fundamental right, the right must be personally waived by a defendant. *Id.* at 161. "To ensure that the defendant's right to testify has been personally waived by the defendant, the court in *Momon* adopted procedural guidelines that call for defense counsel to request a jury-out hearing to demonstrate that the defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made." *State v. Posey,* 99 S.W.3d 141, 148 (Tenn. Crim. App. 2002) (citing *Momon,* 18 S.W.3d at 163).

"Defense counsel is not required to engage in any particular litany, but counsel must show at a minimum that the defendant knows and understands that:

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify."

*Momon,* 18 S.W.3d at 162.

"[C]ourts should consider the following factors when determining whether the denial of the right to testify is harmless beyond a reasonable doubt: (1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the

presence or absence of evidence corroborating or contradicting the defendant on material points; (4) the overall strength of the prosecution's case." *Id.* at 168.

When a petitioner argues that his trial counsel's assistance was ineffective based on *Momon* violations, he or she must establish that his counsel's performance fell below "the range of competence demanded of attorneys in criminal cases," and that counsel's ineffective performance actually adversely impacted his defense. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067; *Baxter,* 523 S.W.2d at 936.

In this case, when asked if Petitioner wanted to testify on his own behalf at trial, trial counsel testified:

> He may have. I, I know I didn't want him to testify, the way the proof was. I felt the proof was very tenuous, as far as showing his culpability, and as far as for him testifying, I did not want him to testify in the least bit. Now I don't remember us having a hearing regarding that, but my recommendation, "Shucks, no, you don't need to testify.

Trial counsel could not remember if Petitioner told him or Mr. Burris or Mr. Coleman that he wanted to testify. He said, "I was wanting to encourage him and speak to him in no uncertain terms, he did not need to testify."

Petitioner testified that he told Mr. Coleman that he wanted to testify, and he also communicated that desire to trial counsel over the phone and in person the day before trial. However, trial counsel did not make any effort to call him as a witness. Petitioner testified that trial counsel never in open court advised the trial court that Petitioner requested the right to testify and that trial counsel had advised against it.

The record does not demonstrate that a *Momon* colloquy occurred during trial. Although we find that trial counsel's performance in this area was deficient, Petitioner has not demonstrated that he was prejudiced by trial counsel's performance. The scope of what Petitioner's trial testimony would have been is not clear from the record. Therefore, as pointed out by the State, Petitioner cannot show by clear and convincing evidence that he was prejudiced due to his failure to testify. The only potential testimony offered by Petitioner at the post-conviction hearing was that he took steps to dispose of the guns after the murder. This evidence would only serve to corroborate and strengthen the State's case against Petitioner and would do nothing to aid Petitioner's defense. Furthermore, Petitioner gave two statements to police which were not entered into evidence at trial. In his first statement, Petitioner denied any involvement in the crime, including the destruction of any evidence. In his second statement, Petitioner told police that he arrived after the murder and was

involved in melting the guns. Even at the post-conviction hearing, Petitioner denied melting the guns and said that he had someone else melt them. If Petitioner testified at trial, he could have been cross-examined with his prior inconsistent statements. Petitioner's possible impeachment is a valid consideration in determining prejudice following a *Momon* error. *See e.g. Miqwon Deon Leach v. State*, No. W2004-01702-CCA-R3-PC, 2005 WL 1651654 (Tenn. Crim. App. July 14, 2005) (Petitioner's prior statement to police that he was not at the night club at the time of the shooting could have been used to impeach him had he testified at trial).

The strength of the State's case against Petitioner also demonstrates that there was no showing of prejudice from the lack of a *Momon* hearing. At trial, Kim Arnwine testified that while the victim was at her house, Petitioner called and asked if he could come over and if she had company. The victim was later shot as he was leaving her house. Dustin Witt testified that he heard Petitioner threaten the victim, and he saw Petitioner crouch down and fire his weapon at the victim after the victim walked out of Ms. Arnwine's house. Perry Cornell Gunter also heard Petitioner declare that he was going to "handle this," and he saw Petitioner crouch down and shoot the victim. There was no indication that the victim saw Petitioner before the shooting occurred. There was testimony that Clifton Omar Robinson and Mr. Gunter gave their weapons to Petitioner, who also had his weapon in his possession while in the car after the murder, and Petitioner said that he would get rid of the pistols. The strength of the State's case may defeat any showing of prejudice. *Billy J. Coffelt v. State*, No. M2009-00474-CCA-R3-PC, 2010 WL 4396496, at *9 (Tenn. Crim. App. Nov. 5, 2010) ("[T]he State's case was very strong with many witness[es] to the incident.").

Based on the foregoing, we find that Petitioner failed to show by clear and convincing evidence that he was prejudiced by his trial counsel's failure to follow the *Momon* procedures and that counsel's failure to do so did not adversely impact his defense. Petitioner is not entitled to relief on this issue.

Fourth, Petitioner contends that trial counsel was ineffective for announcing to the jury during voir dire that he was incarcerated at the time. Trial counsel acknowledged that during voir dire, he told the jury that Petitioner was incarcerated. He said, "I sort of want to do that in case a juror or someone sees him in chains or in the back." At the time trial counsel made the statement, Petitioner was wearing plain clothes. The trial transcript also reflects that trial counsel also asked the venire if they could still treat Petitioner fairly. When asked if informing the jurors that Petitioner was incarcerated "undoes that potential risk of prejudice," trial counsel replied:

> Well, that may be an opinion, and that's always a possibility, but through the
> years, I've sort of found out it's better and that's sort of how I learned. It's

-17-

better to go ahead and let everyone know. "We're in custody; we're here," and that's sort of how I was taught.

This court has recognized that "it is a violation of due process for a state to compel a defendant to stand trial before a jury in prison clothes." *State v. Zonge,* 973 S.W.2d 250, 256 (Tenn. Crim. App. 1997) (citing *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976)). In *Zonge,* a panel of this Court explained that "prison clothing worn at trial is a constant reminder of the defendant's condition and presents an unacceptable risk of influencing a juror's judgment." *Zonge,* 973 S.W.2d at 256 (citing *Estelle,* 425 U.S. at 504-05, 96 S.Ct. at 1693). This court further noted that there is no justification or state interest which would be served by the practice of forcing a defendant to stand trial in his prison garb. *Id.* at 256 (citing *Estelle,* 425 U.S. at 504-05, 96 S.Ct. at 1693). In so doing, we recognized that there may be tactical reasons why a defendant would choose to be tried in a prison uniform. *Id.* at 257 (citing *Estelle,* 425 U.S. at 504-05, 96 S.Ct. at 1693). Accordingly, this Court noted that "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in . . . prison clothes, the failure to make an objection . . . to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Zonge,* at 257 (quoting *Estelle,* 425 U.S. at 512-13, 96 S.Ct. at 1697).

In this case, Petitioner was not shackled or in prison clothes. There is no evidence that the jury had a negative impression or reaction when trial counsel informed them that Defendant was incarcerated. "This court has held that a prosecutor's brief reference to a defendant's incarceration 'hardly compares to a defendant's appearing in shackles before the jury.'" *State v. Paul Edward Corso*, No. M2010-00782-CCA-R3-CD, 2011 WL 2848270, at *20 (Tenn. Crim. App. July 19, 2011)(quoting *State v. Joseph Matthew Maka*, No. W2001-00414-CCA-R3-CD, 2001 WL 1690204, at *4(Tenn. Crim. App. Dec. 28, 2001)); *see also State v. Carlos Demetrius Harris*, No. E2000-00718-CCA-R3-CD, 2001 WL 9927, at *5 (Tenn. Crim. App. Jan. 4, 2001)(no error when prospective jurors indicated that they could give defendant a fair trial and would not hold against him the facts that he was incarcerated and had an appointed attorney). Therefore, trial counsel's brief reference to Petitioner's incarceration does not compare to Petitioner's appearing in shackles or in prison clothing before the jury. Moreover, Petitioner was charged with first degree murder in this case. "[R]eason dictates that in a case of this magnitude, jurors 'must know a person on trial is either on bail or in confinement during the course of a trial.'" *Id*. at *21(quoting *State v. Baker*, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987).

We also note that trial counsel indicated that he made a tactical decision to inform the venire that Petitioner was incarcerated. "The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Estelle v. Williams*, 425 U.S. 501, 508 (1976). "[J]urors are quite aware that the defendant appearing before them did not arrive there by choice or happenstance." *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986). Trial counsel in this case testified that he wanted to inform the jurors of Petitioner's incarceration "in case a juror or someone sees him in chains or in the back." Therefore, trial counsel made a strategic decision that should not be second-guessed by this court. Moreover the evidence of guilt of defendant in this case was strong. Therefore, Petitioner has not demonstrated that he was prejudiced by trial counsel's informing the jurors that he was incarcerated.

Finally, Petitioner asserts that trial counsel was ineffective for failing to object to the qualifications of Special Agent Shelly Betts who testified as an expert witness in the area of firearms examination. He further contends that trial counsel was ineffective for failing to obtain an expert witness to rebut her testimony. Although the State did not specifically tender Special Agent Betts as an expert witness at trial, she was questioned extensively about her training and experience. As pointed out by the State, there is nothing in the record to show that Special Agent Betts was not qualified to be an expert or that her methodologies would not have passed the test in *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (Tenn. 1997). There is no proof that Petitioner was prejudiced by trial counsel's failure to object to Special Agents Betts' qualifications as any such objection more likely than not would have led to the trial court's affirmation of her as a expert witness. In fact at trial, Special Agent Betts testified that she had been previously qualified as a expert to give her opinion in firearms examination and that she had testified in such cases for the past eight years.

As for Petitioner's argument that trial counsel was ineffective for failing to call an expert witness to rebut Special Agent Betts' opinion, Petitioner did not present any evidence at the post-conviction hearing or provide proof of what the testimony of any such evidence would be. The only evidence presented at the post-conviction hearing was trial counsel's testimony that he discussed the matter with Mr. Coleman and Mr. Burris who had both been involved in law enforcement for a number of years. He said that their opinion differed from that of Special Agent Betts. However, Petitioner did not present either of the witnesses at the post-conviction hearing, nor did he present the testimony of any other expert in the area of firearms examination. It has been held that:

> To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim.

App. 1990). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."

*Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008). Petitioner is not entitled to relief on this issue.

### B. *Ineffective Assistance of Counsel on Appeal*

Petitioner contends that he was denied the effective assistance of counsel on direct appeal because trial counsel failed to adequately communicate with him during the appellate process and associated with another attorney for purposes of drafting the appellate brief. Petitioner specifically argues that counsel "failed to adequately perfect and argue issues for appeal," and he complains that trial counsel did not communicate with him or seek his input, and trial counsel did not personally prepare the appellate brief in his case. He states that trial counsel was "detached, uncommunicative, and [possibly] personally uninvolved in the appellate phase of this cause." Petitioner's brief also contains the following statement:

As illustrated above, trial counsel failed on numerous occasions to properly object or preserve an issue for appeal. Among those issues, which were waived by trial counsel's failure to act, were Mr. Gunter's invalid assertion of Fifth Amendment protection, the State's failure to tender Agent Betts as an expert witness and the trial court's corresponding failure to qualify her as such, and the trial court's failure to address [Petitioner's] substantive and procedural rights under *Momon*. At least one of these issues involved a fundamental constitutional right.

The principles for determining the effectiveness of counsel at trial and on appeal are the same in a post-conviction proceeding. *See Campbell v. State,* 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must prove both that 1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and 2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful before the state's highest court. *See Smith v. Robbins,* 528 U.S. 259, 285 (2000). In *Carpenter v. State*, 126 S.W.3d 879 (Tenn. 2004), our supreme court stated the following regarding review of allegations of ineffective assistance by appellate counsel.

Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. *King v. State,* 989 S.W.2d 319, 334 (Tenn.

-20-

1999); *Campbell v. State,* 904 S.W.2d 594, 596-97 (Tenn. 1995). Indeed, "experienced advocates have long 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" *Cooper v. State,* 849 S.W.2d 744, 747 (Tenn. 1993) (quoting *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)); *see also Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. *Jones,* 463 U.S. at 751, 103 S.Ct. 3308; *King,* 989 S.W.2d at 334; *Cooper,* 849 S.W.2d at 747. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference. *See Campbell,* 904 S.W.2d at 597; *see also Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight. *See Campbell,* 904 S.W.2d at 597; *see also Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases. *Campbell,* 904 S.W.2d at 597.

If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. *See, e.g., Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. *See United States v. Dixon,* 1 F.3d 1080, 1083 (10th Cir. 1993).

*Carpenter*, 126 S.W.3d at 887.

At the post-conviction hearing, trial counsel testified that he was appointed as Petitioner's counsel on appeal. He did not recall reviewing the trial transcript with Petitioner who had already been placed within the Department of Correction. Although he could not recall for certain, trial counsel thought that Petitioner sent him letters concerning issues for appeal, and they had some discussions. Trial counsel thought that he "formed" the issues for appeal, and "a gentleman out of North Carolina named Ed Yeager [. . .] probably pieced

together the particulars of the appeal." Trial counsel testified that upon drafting the appeal, he did not review its contents with Petitioner, and he did not request any input from Petitioner or discuss the appeal with him. He provided a copy of the appellate brief to Petitioner after it was filed with the Court of Criminal Appeals.

We find that Petitioner has not demonstrated deficient performance or that he was in any way prejudiced by trial counsel's failure to adequately communicate with him or seek his input during the appellate process or by trial counsel seeking an outside source to assist in preparing the appellate brief. Furthermore, Petitioner has not demonstrated deficient performance or that he was prejudiced by trial counsel's failure to preserve and/or assert certain issues on appeal. As to the appropriate method for a post-conviction petitioner to prove ineffective assistance of appellate counsel, we find guidance in *Carpenter*, where our supreme court held,

> If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, *then the reviewing court must determine the merits of the issue. See*, e.g., *Kimmelman v. Morrison*, 477 U.S. 365 [ ] (1986).

*Carpenter*, 126 S.W.3d at 887 (emphasis added).

In order for the reviewing court to determine the merits of the omitted issue, a petitioner must present the previously omitted issue in the same form and with the same legal argument(s), applying law to the facts of the case, which petitioner asserts appellate counsel should have done. It is not enough to simply state that appellate counsel should have raised certain issues on appeal, and to argue that these issues could have resulted in relief being granted to the petitioner. In the case *sub judice*, Petitioner casually lists the issues, but then mentions that they were waived by trial counsel at trial. We have addressed those issues listed by Petitioner elsewhere in this opinion and do not need to re-address them here. In essence, he has not listed **any** appellate issues that **could** have been raised by trial counsel but were not. Therefore, Petitioner cannot show any deficient performance by counsel in the appellate process or that he was in any way prejudiced by counsel's performance. Accordingly, Petitioner is not entitled to relief on this issue.

### C. Due Process During the Post-Conviction Proceedings

Petitioner contends that he was denied due process of law and his statutory right to counsel during his post-conviction proceedings. More specifically, he argues that post-conviction counsel "failed to utilize readily available transcripts from prior proceedings which would have further bolstered his case." Petitioner contends that post-conviction

counsel failed to conduct interviews or present testimony from certain witnesses, and the "deficiencies marring the investigation and presentation of evidence at the evidentiary hearing denied [Petitioner] due process of law and a fair hearing on the post-conviction relief petition." We note that Petitioner's counsel in this appeal is not one of the attorneys who represented Petitioner during the post-conviction proceedings in the trial court.

Our supreme court has held that "'the opportunity to collaterally attack constitutional violations occurring during the conviction process is not a fundamental right entitled to heightened due process protection.'" *State v. Stokes,* 146 S.W.3d 56, 60 (Tenn. 2004) (quoting *Burford v. State,* 845 S.W.2d 204, 207 (Tenn. 1992)). There is no constitutional right to counsel in post-conviction proceedings, and "'there is no constitutional right to effective assistance of counsel in post-conviction proceedings.'" *Id.* (quoting *House v. State,* 911 S.W.2d 705, 712 (Tenn. 1995)). All that "due process requires in the post-conviction setting is that the petitioner have 'the *opportunity* to be heard at a meaningful time and in a meaningful manner.'" *Id.* at 61 (quoting *House,* 911 S.W.2d at 711). However, there is a statutory right to counsel. Tenn. Code Ann. § 40-30-107(b)(1). "The appointment of counsel assists in ensuring that a petitioner asserts all available grounds for relief and fully and fairly litigates these grounds in a single post-conviction petition." *Leslie v. State*, 36 S.W.3d 34, 38 (Tenn. 1999).

Petitioner's grounds for post-conviction relief were fully and fairly heard by the post-conviction court. Petitioner was represented by two different attorney on post-conviction. Initial counsel reviewed Petitioner's petition and filed a notice that no amended petition would be filed. After Petitioner's second post-conviction counsel was appointed, counsel filed a motion to continue in order to fully prepare for the post-conviction hearing. The motion contained the following language:

> Due to the seriousness of the charges for which the Defendant was convicted, the voluminous trial record, the multitude of witnesses, and the Defendant's incarceration in the Morgan County Correctional Complex, efforts of preparation by the State and the defense are on ongoing.

A hearing was later held, and the post-conviction court gave post-conviction counsel ample latitude to pursue the claims deemed reasonable by presenting witnesses and arguments of counsel.

In *Stokes,* "our Supreme Court concluded that there was no due process violation because there is no right to effective assistance of counsel for post-conviction proceedings and 'the petitioner was afforded a full evidentiary hearing and full review in his first-tier post-conviction appeal.'" *Jerry D. Carney,* No. M2002-02416-CCA-R3-PC, 2005 WL

351238, at \*5 (Tenn. Crim. App. Feb. 14, 2005)(quoting *Stokes,* 146 S.W.3d at 61)). The same is true in this case. The Petitioner was also afforded a full evidentiary hearing, and this case is his first-tier post-conviction appeal. *Id.* Accordingly, we conclude that the Petitioner was given the opportunity to be heard at a meaningful time in a meaningful manner. *Id.; see also Randy Caldwell v. State,* No. M2001-00334-CCA-R3-PC, 2002 WL 31730875, at \*15 (Tenn. Crim. App., Nashville, Dec. 4, 2002). Petitioner is not entitled to relief on this issue.

We conclude that Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel at trial or on appeal or that he was prejudiced by any alleged defective representation by counsel. We further conclude that Petitioner was afforded the opportunity to be heard at a meaningful time and in a meaningful manner during his post-conviction proceedings. Petitioner is not entitled to relief in this appeal. Accordingly, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE